[Civ. No. 4568. Second Appellate District, Division Two.—January 19, 1928.]

GEORGE GARTLER et al., Respondents, v. THE FIRST NATIONAL BANK OF SAN PEDRO, CALIFORNIA (a Corporation), Appellant.

Goodspeed & Pendell for Appellant.

No appearance for Respondents.

STEPHENS, J., *pro tem.*—On August 23, 1919, George Gartler, one of the plaintiffs, paid $501.50 to defendant bank at San Pedro for a draft in favor of H. Gartler, the other plaintiff, calling for 6,250 lei, Roumanian money, from the "Banca Moldova" in the city of Jasi, Roumania. The draft was presented to the drawee bank on September 15, November 8, and December 15, and 19, 1919, but each time payment was refused. Later H. Gartler, the payee, having meanwhile removed to San Pedro, together with George Gartler, the purchaser of the draft, brought suit against defendant bank for $501.50 as damages, with legal interest and costs, alleging that since presentation 6,250 lei "have become of little or no value in dollars." Defendant submitted a demurrer upon the ground that no cause of action had been stated. Defendant also demurred for uncertainty on many grounds, among them the following: That it cannot be ascertained from the complaint whether or not protest had been made after presentation of the draft; why payment was refused; what act or omission is chargeable to defendants; whether plaintiffs are suing for rescission or for damages from breach of contract; or what date value of the lei is to be taken in estimating damages; and upon the further ground that the complaint is ambiguous and unintelligible in all of the particulars set out in the demurrer as to uncertainty, including those hereinabove specified. A special demurrer was likewise interposed upon the misjoinder of the parties plaintiff. The demurrers were overruled and defendant answered, putting practically all of the allegations of the complaint in issue; that the draft was a foreign bill of exchange; that defendant did everything legally required of it, and that Banca Moldova was at all times ready, willing, and able to honor said draft upon proper identification of the payee. The trial court found generally in favor of plaintiffs and against defendant, and judgment was entered according to plaintiff's prayer. The case was appealed by defendant and is here on a bill of exceptions.

We think that both the special and general demurrers should have been sustained. "All persons having an interest in the subject of the action, and in obtaining the relief demanded, may be joined as plaintiffs, except when otherwise provided in this title." (Sec. 378, Code Civ. Proc.) This, of course, means a legal or property interest. (*Toomey* v. *Knoblach*, 8 Cal. App. 585 [97 Pac. 529].) ▉ Plaintiffs may be joined where the action would afford relief to each of them even where the relief would not be exactly the same, but we know of no case holding proper a joinder of plaintiffs where the recovery of one would be inconsistent with the recovery of another. ▉ The purchaser of a draft generally has a very different interest in its payment than the payee, and there is no allegation in the complaint in the instant case showing any common interest in the judgment prayed for. They cannot join in one action so as to secure a judgment against the bank "going or coming." There is no allegation in the complaint that George Gartler (purchaser) has suffered in any way other than by the deprivation of the $501.50 from date of purchase of the draft to the date of suit, and this of course would be legally compensated by legal interest, which is the prayer and the judgment. This could hardly be on any other basis than money had and received, or rescission, since the thing he required done has not been done. He accepts this as a fact, that the contract has failed, and asks for his money back. Upon any theory of this kind surely H. Gartler (payee) has no interest as a coplaintiff. If any basis for a judgment against the bank (drawer) can be found in favor of H. Gartler, it must be because he has removed to the drawer's situs, and not having received the money called for by the draft, seeks to enforce the contract and get it directly from the drawer. Such a judgment would be of no legal interest to George Gartler, but would be upon a basis of enforcing the contract exactly opposite to the basis of any judgment George Gartler could possibly have. It follows that the demurrer upon the ground of misjoinder should have been sustained.

However, if "no impairment of substantial rights" results, a judgment will not be reversed on this ground. (*Daly* v. *Ruddell*, 137 Cal. 674 [70 Pac. 784].) Let us see, then, if the judgment can possibly be sustained. The draft was a

negotiable instrument drawn upon another and placed out of the purchaser's hands and control. ■ Before the purchaser, George Gartler, could recover the purchase price, with interest, he would have to allege and prove his ownership and possession of the draft. There is no such allegation or proof. Before H. Gartler (payee) could recover the purchase price, as such, he would have to allege assignment of the purchaser's rights, in addition to ownership and possession of the draft; and there is no such allegation or proof. If he seeks to recover as payee he is entitled to 6,250 lei or its equivalent in American money; and the court finds, without any proof, that the lei is worth little or nothing. If he seeks damages over what the lei would have been worth when the draft was presented, he is attempting to hold the drawer responsible for failure of payment, and the complaint would have to allege, in addition to presentation and refusal, a protest as required by the code in the case of a foreign bill of exchange.

"A bill of exchange is an unconditional order in writing addressed by one person to another, signed by the person giving it, requiring the person to whom it is addressed to pay on demand or at a fixed or determinable future time a sum certain in money to order or to bearer." (Civ. Code, sec. 3207.)

"Where any negotiable instrument has been dishonored it may be protested for non-acceptance or non-payment as the case may be; but protest is not required except in the case of foreign bills of exchange." (Civ. Code, sec. 3199.)

"Where a foreign bill appearing on its face to be such is dishonored by nonacceptance, it must be duly protested for nonacceptance, and where such a bill which has not previously been dishonored by nonacceptance is dishonored by nonpayment, it must be duly protested for nonpayment. If it is not so protested, the drawer and indorsers are discharged. Where a bill does not appear on its face to be a foreign bill, protest thereof in case of dishonor is unnecessary." (Civ. Code, sec. 3233.)

The protest must be made in the manner provided in accordance with sections 3234 to 3241, inclusive, of the Civil Code.

No allegations as to these requirements appear in the complaint in question, and the general demurrer should therefore have been sustained.

The complaint alleges that the dollar value of the Roumanian lei declined to practically no value in dollars after presentation of and the refusal to honor the draft, and the findings follow this allegation. Since there was no proof on the subject, it follows that the evidence does not support the findings in that regard. In the view we take of the case it does not matter whether or not this finding was a material one.

The demurrer as to misjoinder and the demurrer upon the ground that the complaint does not contain allegations sufficient to constitute a cause of action should have been sustained.

Judgment reversed.

Works, P. J., and Thompson, J., concurred.