Filed 4/30/14  Cal-Murphy v. MG Restaurants CA21/5

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| CAL-MURPHY, LLC ET AL.,<br><br>Plaintiffs and Appellants,<br><br>v.<br><br>MG RESTAURANTS, INC. ET AL.,<br><br>Defendants and Respondents. | A136198, A136854<br>(Consolidated)<br><br>(San Francisco County<br>Super. Ct. No. CGC-08-473750) |

In these consolidated appeals, Cal-Murphy, LLC, Najeeb Shihadeh, Mary Christina Shihadeh, and George D. Omran appeal from judgments entered in this dispute arising out of a commercial lease.

Appellants contend the trial court erred by (1) granting summary adjudication on their trespass claim (which they based on an exhaust duct installed in their leased premises), on the grounds that their lease contained a consent to the installation of the duct and odors cannot constitute a trespass as a matter of law; (2) denying their motion for reconsideration of the summary adjudication order; (3) granting judgment on the pleadings, without leave to amend, on their separate claim for trespass based on an accumulation of oil and grease within the duct; (4) granting judgment on the pleadings on their nuisance claim for damages, on the ground that the recovery of damages was

1

precluded by an exculpatory clause in the lease; (5) granting summary adjudication on their cause of action for breach of the implied covenant of good faith and fair dealing, which they based on their claim that respondents leased space to a purported competitor restaurant; (6) granting summary adjudication on their implied covenant claim based on respondents' delayed installation of signage; (7) granting summary adjudication on their implied covenant claim based on their limited opportunity to deploy a "sandwich board" to advertise their restaurant; (8) sustaining a demurrer without leave to amend and dismissing the action as to a purported successor of one of the defendants; (9) denying their motion to set aside this dismissal order based on their attorney's excusable or inexcusable neglect; (10) denying leave to file a sixth amended complaint; and (11) dismissing the individual plaintiffs on the ground they lack standing as real parties in interest. We will affirm the judgments.

## I. FACTS AND PROCEDURAL HISTORY

Defendant-respondent NOP 560 Mission LLC (NOP) owned an office building at 560 Mission Street in San Francisco (Building). Defendant-respondent Hines Interests Limited Partnership (Hines) managed the Building. For convenience, we will often adopt appellants' convention of referring to these respondents as NOP/Hines.

Plaintiff-appellant Cal-Murphy, LLC (Cal-Murphy) operated a restaurant called Murphy's Deli pursuant to a lease of street-level space in the Building. Plaintiffs-appellants Najeeb Shihadeh, Mary Christina Shihadeh, and George Omran (Individual Plaintiffs) were members of Cal-Murphy.

Cal-Murphy and the Individual Plaintiffs sued NOP/Hines and others for numerous causes of action, contending they harmed Murphy's Deli in various ways. Through a series of motions, judgments were entered against Cal-Murphy and the Individual Plaintiffs on all causes of action against respondents. While we will later discuss in much greater detail the allegations, evidence, and procedural history relevant to the issues on appeal, at this juncture we set forth only a brief overview for context.

2

A.  The Lease

By January 2004, Hines and Murphy's Deli Franchising, Inc. (MDF) had negotiated a lease for a restaurant to operate in a portion of the street-level retail space in the Building (Lease).  The Lease, between National Office Partners Limited Partnership (assignor to NOP) as "Landlord" and MDF as "Tenant," consists of nearly 50 pages. Among the Lease provisions relevant to this appeal are (1) section 2.02, which confirms the landlord's discretionary authority over common areas and reserves the right to install conduit in the leased premises without unreasonable interference with the tenant's use; (2) section 4.04, which governs signage; (3) section 3.03(c), which specified that the tenant had no exclusive right to operate a restaurant in the Building; (4) section 5.07(j), which noted the landlord's right to lease space in the Building to any party; (5) section 7.04, which exonerated the landlord from liability for damages arising from acts or omissions; and (6) section 7.14, which provides that the Lease cannot be amended except in writing.

In March 2004, MDF subleased the leased premises to the Individual Plaintiffs, who assumed the rights and obligations of the Lease.  By October 2004, the Individual Plaintiffs formed Cal-Murphy and assigned the sublease to it.  Murphy's Deli opened for business in April 2005.

B.  The Problems

Appellants thereafter faced a host of problems, which they attribute to respondents and others.  We confine our summary to the matters at issue in this appeal.

1.  Limited Display of Sandwich Board

In late 2004 or early 2005, Cal-Murphy's on-site manager for Murphy's Deli (Steven Dudum) was advised by NOP/Hines's building manager (Sandra Brownstone) that Murphy's Deli could display a "sandwich board" (a two-sided, A-shaped sign that rests on the ground) outside the leased premises.  Dudum had a sign made and showed it to another building manager, who approved it for display from April 20 to May 26, 2005—but only for that period.

3

As discussed *post*, appellants contend NOP/Hines thereby breached the implied covenant of good faith and fair dealing in the Lease. NOP/Hines contends there was no breach because, essentially, the Lease gave it sole discretion to make the decision.

### 2. Delayed Installation of Blade Sign

Section 4.04 of the Lease granted Cal-Murphy a right to install, at its own expense and with NOP/Hines's approval, a sign on the exterior surface of the Building. In early 2006, Building property manager Brownstone told the operations manager for Murphy's Deli (Bajis Katwan) that NOP/Hines intended to install a "blade sign" (extending horizontally from the exterior wall of the Building) for Murphy's Deli at *NOP/Hines's* expense. In February 2007, NOP/Hines advised that this sign would be installed within four to six weeks. It was not installed, however, until April 14, 2008.

Appellants contend NOP/Hines breached the implied covenant of good faith and fair dealing in the Lease by delaying the installation of the sign; for various reasons, NOP/Hines disagrees.

### 3. Lease to Competitor Mixt Greens

In October 2007, NOP/Hines leased the space adjacent to Murphy's Deli to a restaurant called Mixt Greens, which appellants contend is a competitor of Murphy's Deli. Mixt Greens opened for business in April 2008.

Appellants claim that, by leasing to Mixt Greens, NOP/Hines breached the implied covenant of good faith and fair dealing; NOP/Hines counters that the Lease did not require it to lease to a complementary rather than competitive restaurant.

### 4. Mixt Greens's Duct, Odors and Grease

In January 2008, NOP/Hines's assistant building manager informed Katwan that NOP/Hines intended to run ducts through Murphy's Deli to service Mixt Greens's cooking equipment. By February 8, 2008, Mixt Greens's cooking equipment, including a gas grill and a "Type II" cooking hood, was connected to ducts running from Mixt Greens's kitchen, across the ceiling of the adjacent space of Murphy's Deli, and out to an alley behind the Building.

4

After Mixt Greens opened in mid-April 2008, bad odors entered Murphy's Deli, and customers complained. Beginning in December 2009 (after appellants commenced litigation against NOP/Hines, see *post*), a buildup of grease was found inside the ducts that passed through Murphy's Deli. Mixt Greens stopped cooking in approximately January 2012. In March 2012, the ducts were removed.

Appellants argue that the ducts, and particularly the odors emitted from the ducts into Murphy's Deli and the grease and oils accumulated within the ducts, constituted a nuisance and a trespass by NOP/Hines into the leased premises. NOP/Hines counters that, in light of certain provisions of the Lease, it has no liability as a matter of law.

C. The Litigation

Based on these and other events, appellants pursued this lawsuit.

1. Appellants' Complaint and Amended Complaints

In March 2008, Cal-Murphy and the Individual Plaintiffs filed a complaint against NOP/Hines, asserting causes of action for fraud, negligent misrepresentation, breach of the implied covenant of good faith and fair dealing, breach of the Lease, and trespass.

In April 2008, after Mixt Greens opened for business next to Murphy's Deli, Cal-Murphy and the Individual Plaintiffs filed a first amended complaint, adding Mixt Greens as a defendant and causes of action for nuisance.

Cal-Murphy and the Individual Plaintiffs thereafter filed a second amended complaint, third amended complaint, fourth amended complaint, and first and second amendments to the fourth amended complaint.

The fifth amended complaint—the operative pleading at the time of the orders at issue in this appeal—contained causes of action against NOP/Hines for, as relevant here: breach of the implied covenant of good faith and fair dealing; trespass; nuisance; and trespass based on the alleged accumulation of grease in the duct. As discussed *post*, Mixt Greens's purported successor, respondent MG Restaurants (MGR), was eventually added as a defendant.

5

As mentioned, all of appellants' claims against respondents were ultimately dismissed. For clarity, we briefly set forth here the disposition of these claims according to the parties involved, leaving a more precise chronology for later discussion.

2. Judgment of Dismissal as to Claims Against NOP/Hines

In April 2011, the court granted NOP/Hines's motion for summary adjudication as to Cal-Murphy's third cause of action for breach of the implied covenant of good faith and fair dealing, which had been based on the lease of space to Mixt Greens, delay in installing a blade sign, and refusal to permit a sandwich board (as well as a purported refusal to permit Murphy's Deli to install a grill while allowing Mixt Greens to use one).

By written order filed on March 5, 2012, the court next granted NOP/Hines's motion for summary adjudication as to the fifth cause of action for trespass based on the ducts. Cal-Murphy filed a motion for reconsideration, asserting newly discovered evidence of holes and openings in the ducts that permitted odors to enter Murphy's Deli. In April 2012, by written order entered on May 11, 2012, the court denied Cal-Murphy's motion for reconsideration.

In April 2012, the court granted NOP/Hines's motion for judgment on the pleadings as to the ninth cause of action for trespass based on the accumulation of grease within the ducts, but allowed Cal-Murphy to submit a proposed amendment to its pleading.

On May 18, 2012, by written order filed on June 18, 2012, the court denied Cal-Murphy leave to file its proposed sixth amended complaint, thereby also denying its request for leave to amend its pleading as to the ninth cause of action.

Also by written order filed on June 18, 2012, the court granted NOP/Hines's motion for a case management order excluding all evidence of damages against it in regard to the claims remaining in the case, on the ground that a damages award was precluded by the exculpatory clause in the Lease. On that same date, the court granted NOP/Hines's motion for judgment on the pleadings with respect to the remaining sixth cause of action for nuisance, in light of the case management order excluding evidence of damages.

6

On June 18, 2012, judgment was entered in favor of NOP/Hines.

### 3. Judgment of Dismissal as to Claims Against MGR

Meanwhile, in February 2012, Cal-Murphy substituted MGR as Doe One in the fifth amended complaint. MGR was an entity created by David Silverglide, a former principal of Mixt Greens. MGR had acquired the principal assets of Mixt Greens in California, including the equipment at 560 Mission Street.

In March 2012, MGR filed a demurrer to the fifth amended complaint. Cal-Murphy did not file an opposition to the demurrer. Instead, at the hearing on the demurrer, Cal-Murphy's attorney advised the court that he had filed a declaration with a proposed sixth amended complaint and believed he could file an amended complaint against MGR as of right.

On May 7, 2012, the court sustained MGR's demurrer without leave to amend. On May 24, 2012, a judgment of dismissal was entered in favor of MGR.

On June 18, 2012, and by written order filed on September 4, 2012, the court denied Cal-Murphy's motion for relief from the dismissal under Code of Civil Procedure section 473.

### 4. Judgment Dismissing Individual Plaintiffs

In June 2011, and by written order dated July 29, 2011, the court sustained without leave to amend a demurrer by NOP/Hines to the fifth amended complaint as to the Individual Plaintiffs, on the ground they lacked standing.

A judgment of dismissal was entered against the Individual Plaintiffs in August 2012.

### 5. Appellants' Appeals

In July 2012, Cal-Murphy filed a notice of appeal from the judgment entered in favor of NOP/Hines, the judgment dismissing MGR, and the order denying relief from that dismissal. This became appeal number A136198.

In October 2012, Cal-Murphy and the Individual Plaintiffs appealed from the judgment of dismissal of the Individual Plaintiffs, as well as an amended judgment of dismissal of MGR (amended in September 2012 to include the amount of costs awarded),

7

the order denying relief from the dismissal (to the extent the previous notice of appeal was inadequate), and a September 2012 order on Cal-Murphy's motion to strike costs. This became appeal number A136854.

Appeals A136198 and A136854 were consolidated.[1]

## II. DISCUSSION

We address appellants' contentions in turn.

### A. Summary Adjudication of Fifth Cause of Action (Trespass by Duct)

The fifth cause of action of Cal-Murphy's fifth amended complaint asserted a trespass based on the ducts that were installed through the leased premises of Murphy's Deli. The cause of action incorporated by reference paragraph 15 of the pleading, alleging that "two permanent, galvanized metal ducts" were constructed by defendants through Murphy's Deli's leased premises to enable Mixt Greens to operate a grill, without Cal-Murphy's consent, and there was "no provision in the Lease that would permit such action." It also incorporated paragraphs 16 and 27, alleging that odors had been emitted into Murphy's Deli and oils had accumulated inside the ducts as a result of NOP/Hines's failure to require Mixt Greens to install the "proper" equipment.

---

[1] Claims by Cal-Murphy against Mixt Greens, and a cross-action by NOP against MDF and others, are pending in the San Francisco Superior Court. Also pending are other appeals. In January 2013, Cal-Murphy and the Individual Plaintiffs appealed from postjudgment orders relating to attorneys' fees and costs imposed against the Individual Plaintiffs (appeal number A137609). In February 2013, the trial court entered amended judgments for NOP/Hines and against Cal-Murphy in the amount of $2,472,615 for attorneys' fees and costs, and an amended judgment for NOP/Hines and against the Individual Plaintiffs in the amount of $1,468,743 for attorneys' fees and costs, and Cal-Murphy and the Individual Plaintiffs appealed (appeal number A137959). These judgments have been superseded by "Corrected and Second Amended" judgments, which reflect orders awarding supplemental attorney fees to NOP and eliminate an attorney fee award in favor of Hines; these judgments are the subject of appeal number A139772. In the interest of justice and judicial economy, we construe the notices of appeal broadly so we may decide the issues briefed in appeals A136198 and A136854 notwithstanding the amendments to the judgments, and we leave the issues raised by those amendments to appeals A137959 and A139772.

8

NOP/Hines moved for summary adjudication, and the parties debated at length—as they do here—the scope of the fifth cause of action.  The claim plainly encompasses the *installation* of the ducts within the premises of Murphy's Deli.  Cal-Murphy contends it also asserts a trespass based on odors that entered Murphy's Deli via the ducts, and the allegedly improper construction or design of the ducts (which led to the odors in Murphy's Deli and the accumulation of grease).

In this section of our opinion, we consider the installation of the ducts, as well as Cal-Murphy's evidence concerning the construction and the intrusion of odors into its premises.  We address Cal-Murphy's contention of a trespass based on the accumulation of grease *post* in the context of Cal-Murphy's ninth cause of action, which asserted a trespass based specifically on the grease.

1. Law

We conduct an independent review to determine whether there is a triable issue of material fact and the moving party is entitled to summary adjudication as a matter of law. (Code Civ. Proc., § 437c, subd. (c); *Aguilar v. Atlantic Richfield Co*. (2001) 25 Cal.4th 826, 860.)  We construe the moving party's evidence strictly, and the non-moving party's evidence liberally, in determining whether there is a triable issue.  (See *D'Amico v. Board of Medical Examiners* (1974) 11 Cal.3d 1, 20; *Alex R. Thomas & Co. v. Mutual Service Casualty Ins. Co*. (2002) 98 Cal.App.4th 66, 72 (*Thomas*).)

A defendant seeking summary adjudication must show that at least one element of the plaintiff's cause of action cannot be established, or that there is a complete defense to the cause of action. (Code Civ. Proc., § 437c, subd. (p)(2).)  The burden then shifts to the plaintiff to show there is a triable issue of material fact on that issue. (See Code Civ. Proc., § 437c, subd. (p)(2); *Thomas*, *supra*, 98 Cal.App.4th at p. 72.)

2. NOP/Hines Met Its Initial Burden

"The essence of the cause of action for trespass is an 'unauthorized entry' onto the land of another."  (*Spinks v. Equity Residential Briarwood Apartments* (2009) 171 Cal.App.4th 1004, 1042-1043 (*Spinks*).) If the entry has been by consent, the element of unauthorized entry is not established, and there has been no trespass.  (*Civic Western*

*Corp. v. Zila Industries, Inc.* (1977) 66 Cal.App.3d 1, 16-17.) Consent may be provided by prior agreement. (*Williams v. General Elec. Credit Corp.* (1958) 159 Cal.App.2d 527, 532.)

NOP/Hines sought summary adjudication on the ground that the alleged entry into Cal-Murphy's leasehold—the installation of the duct—was the subject of a prior consent set forth in section 2.02 of the Lease.

Section 2.02, entitled "Landlord's Reserved Rights," provides in part: "Landlord reserves from the leasehold estate hereunder, in addition to all other rights reserved by Landlord under this Lease: (i) all exterior walls and windows bounding the Leased Premises, and all space located within the Leased Premises for Major Vertical Penetrations, *conduits, electric and other utilities, air-conditioning, sinks or other Building facilities* that do not constitute Tenant Extra Improvements, the use thereof and access thereto through the Leased Premises for operation, maintenance, repair or replacement thereof, and (ii) the right from time to time, without unreasonable interference with Tenant's use, *to install, remove or relocate any of the foregoing for service to any part of the Building* to locations that will not materially interfere with Tenant's use of the Leased Premises . . . ." (Italics added.)

In essence, section 2.02 permits NOP/Hines to install a "conduit[ ]" in any part of the Building, as long as the installation does not unreasonably interfere with the Tenant's use, at a location that will not materially interfere with the Tenant's use.

NOP/Hines contended that the duct is a "conduit" or air conditioning within the meaning of section 2.02, and presented evidence that the installation of this conduit did not interfere with Cal-Murphy's use of the premises: NOP/Hines arranged for the installation of the duct on a schedule "acceptable to Murphy's Deli"; the duct was installed along the ceiling of the leased premises, 25 feet from the floor, and was not in the way of Murphy's Deli's activities or the operation of the restaurant; and Amad Qureshi, a manager of Murphy's Deli, testified to the effect that the duct (itself) did not preclude Murphy's Deli from making sandwiches or its employees from doing their

jobs.[2] From this evidence, a reasonable trier of fact could conclude that the installation of the duct, at the location at which it was installed, did not unreasonably or materially interfere with Cal-Murphy's use of the leased premises. As such, section 2.02 provided consent to the duct, and its installation would not constitute a trespass.

The burden shifted to Cal-Murphy to establish a triable issue of material fact.

### 3. Cal-Murphy Failed to Show a Triable Issue of Material Fact

Cal-Murphy did not submit evidence to establish a triable issue with respect to an unreasonable interference with its premises based on the duct's installation. Instead, it presented evidence that (1) its leasehold was unreasonably interfered with by the *odors* from Mixt Greens, which entered its premises *via* the duct; (2) NOP/Hines's conduct exceeded the consent set forth in section 2.02; and (3) Cal-Murphy withdrew its consent.

### a. *Unreasonable Interference Based on Odors*

Cal-Murphy argues there is a triable issue as to whether the installation of the duct unreasonably interfered with Cal-Murphy's tenancy because of the resulting odors, particularly due to the odors' impact on customers and potential customers. It points to testimony by Qureshi that "[t]here is smells somewhere from there [the duct] or from next door or from outside, I don't know," which began after Mixt Greens started business. A declaration from Bajis Katwan, the operations manager, references odors but does not describe any interference by the duct itself. On-site manager Osama Sweiti's declaration asserted daily receipt of complaints from customers about the odors (not the duct itself). The declaration of Dana Zumot, another on-site manager, averred that the odors stopped when the "ducts inside Mixt Greens" were removed. Cal-Murphy also points to evidence that sales increased by over 30 percent for the first four months after

---

[2] When asked about whether the duct interfered with the operations of Murphy's Deli, Qureshi replied: "I don't understand why you're asking this question. I mean this light, this light, are stopping us while talking with me or you? No, right? It's there. The duct is there."

11

the odors stopped.[3]  The inference from this evidence is that Murphy's Deli was affected by the odors, not the duct itself, particularly since Murphy's Deli saw an uptick in sales after Mixt Greens stopped cooking in January 2012, while the duct remained in place until March 2012.

However, evidence that the *odors* interfered with the operations of Murphy's Deli did not create a disputed issue of fact *material* to the trespass cause of action.

In the first place, as a matter of law, odors do not create a trespass. (See *Wilson v. Interlake Steel Co.* (1982) 32 Cal.3d 229, 232-233 (*Wilson*) [like other intangible intrusions such as odor or light, noise from an adjacent property does not constitute trespass unless it causes physical damage]; *San Diego Gas & Electric Co. v. Superior Court* (1996) 13 Cal.4th 893, 935-937 (*San Diego Gas*) [intentional emission of electromagnetic radiation onto plaintiffs' property does not constitute trespass].)

Cal-Murphy's attempt to distinguish *Wilson* and *San Diego Gas* is unavailing.  It is true that the plaintiffs in those cases claimed a trespass based on intangible intrusions into their premises from *another* property, as opposed to Cal-Murphy's claim of a trespass based on odors emitted from the duct passing *through* and outside its premises. However, this distinction is immaterial.  The point is that intangible phenomena that do not cause physical damage to the plaintiff's property cannot be the basis of a trespass. (*San Diego Gas, supra*, 13 Cal.4th at pp. 936-937 [allegation that electromagnetic fields made the property unsafe and uninhabitable was insufficient, because it asserted only a risk of personal harm, not harm to property].)  In the matter before us, there was no evidence that the odors from Mixt Greens's kitchen, however they made their way into Murphy's Deli, caused physical damage to Cal-Murphy's property.

---

[3]     NOP/Hines argues that the assertion of a 30 percent increase in sales is not supported by admissible evidence, and Cal-Murphy's record citations are to evidence the trial court ruled inadmissible, Cal-Murphy's briefs, or the proposed (but unfiled) sixth amended complaint.  Zumot's declaration avers that sales increased.

Thus, while the installation of the duct was a physical intrusion, it was not a trespass because of the consent under section 2.02; and the intrusion by the odors was not a trespass because it did not constitute a physical intrusion or cause physical damage.

That the odors did not in themselves constitute a trespass does not totally resolve the matter, however. Cal-Murphy's argument is not so much that the odors constituted a trespass, but that the odors meant the *duct* eventually *interfered unreasonably* with Cal-Murphy's use of the premises, and therefore the duct's installation would not fall within the consent set forth in section 2.02. NOP/Hines does little to rebut this point, but again we must disagree.

The consent provided by section 2.02 is subject to the condition that the *installation* of the duct not interfere with the leased premises. The language that NOP/Hines has the "right from time to time, without unreasonable interference with Tenant's use, *to install, remove or relocate* [conduit]" squarely points to an interference arising from the act of the installation itself, at the time of the installation (italics added). Here, the evidence is that Mixt Greens's odors arose months after the installation, and no evidence was presented that the initial installation itself unreasonably interfered with Cal-Murphy's use of the leased premises.[4] Accordingly, whether or not the evidence of the odors could give rise to some other cause of action, Cal-Murphy has not demonstrated a triable issue of fact material to whether the consent in section 2.02 precluded Cal-Murphy's *trespass* claim.

### b. Conduct Exceeding Consent

Cal-Murphy next contends there was a triable issue of material fact as to whether NOP/Hines's conduct *exceeded* the consent reflected in section 2.02. (Citing Rest.2d Torts, § 892A, subds. (2)(b) & (4); see *Dwyer v. Carroll* (1890) 86 Cal. 298, 302-303 [landlord trespassed where it constructed a new story on the building and dug a cellar,

---

[4]   Cal-Murphy presents no substantial argument as to the other condition of the consent set forth in section 2.02:  that the conduit be installed at a location "that will not materially interfere with Tenant's use of the Leased Premises."  In any event, this condition also refers to the duct's installation.

depriving tenant of the use of its leased premises, because tenant agreed landlord could enter only to make repairs to a first-story floor]; *Williams v. General Elec. Credit Corp.* (1958) 159 Cal.App.2d 527, 533 [although seller had an implied right to enter into buyer's premises to repossess items upon the buyer's default, its entry into other parts of the buyer's residence could constitute a trespass].)  Specifically, Cal-Murphy refers us to evidence that, it claims, shows the lack of a proper building permit for the duct, the wrong type of duct, violations of the California Mechanical Code, and the emission of odors and creation of a fire hazard.

Cal-Murphy's argument is unavailing.  A trespass requires physical entry. NOP/Hines's physical entry into the leased premises was only to install the duct (covered by section 2.02), and none of the evidence Cal-Murphy cites shows a *physical* entry into its premises *beyond* the installation.  Nor is there evidence NOP/Hines physically intruded any distance or manner unnecessary for the duct's installation, or that it constructed more than the duct.  And even if Mixt Greens's later emission of odors into the leased premises could be attributed to NOP/Hines, it did not constitute a physical intrusion.  Accordingly, Cal-Murphy failed to demonstrate a material triable issue as to whether NOP/Hines exceeded the consent set forth in section 2.02.

### c. Withdrawal of Consent

In a footnote in its opening brief in this appeal, Cal-Murphy contends there was a triable issue as to whether Murphy's Deli had effectively *withdrawn* the consent provided by section 2.02, since Cal-Murphy filed its lawsuit and its manager (Katwan) twice raised an objection with the Building's assistant manager, first claiming the installation of the ducts was a trespass and, after viewing the duct outside, asserting that odors would likely enter Murphy's Deli.

Cal-Murphy's argument has no merit.  A party cannot unilaterally withdraw from the terms of its contract by merely objecting to the other party's exercise of its contractual right or claiming in a pleading that the right does not exist.

14

In sum, Cal-Murphy did not establish a triable issue of material fact, and the court did not err in granting summary adjudication on the fifth cause of action for trespass.[5]

### 4. Motion for Reconsideration

Ten days after notice of the entry of the order granting summary adjudication on the fifth cause of action, Cal-Murphy filed a motion for reconsideration based on newly discovered evidence. (Code Civ. Proc., § 1008.) According to the motion, the duct that ran through Murphy's Deli was removed after the summary adjudication hearing, and Cal-Murphy's expert observed holes and openings in the duct. Cal-Murphy offered evidence that odors could have or would have entered Murphy's Deli through these holes and openings, which purportedly had been caused by improper welding of the duct sections.

The court denied Cal-Murphy's motion but took its prior ruling under reconsideration for another reason. As explained in the court's written order: "The motions for reconsideration are denied. The Court on its own motion reconsidered the question of whether an allegedly defectively-constructed duct can constitute a trespass because of its impact on Plaintiff's business due to alleged release of odors into the business from the duct. Intrusion into Plaintiff's business by odors does not constitute a trespass as a matter of law. The claim that defects in the construction of the duct caused the odors to enter the business does not change that."

Cal-Murphy contends the court erred. We disagree. For the reasons stated *ante*, the installation of the duct did not constitute a trespass because it was authorized by section 2.02; the emission of the odors did not constitute a trespass because odors are intangible and there was no evidence they caused physical damage; and, even considering Cal-Murphy's newly discovered evidence, the fact that the duct was one of the means by

---

[5]     In another footnote in its opening brief, Cal-Murphy argues that section 2.02 should not be interpreted to confer consent for the installation of the duct, because the provision did not purport to cover a leasehold improvement installed for the benefit of another tenant (a competing business) and the ducts were "Tenant Extra Improvements" excluded under section 2.02. Because Cal-Murphy does not explain or support this argument in its opening brief, it is both waived and unpersuasive.

15

which Mixt Greens's odors may have entered Murphy's Deli does not render the duct an intrusion outside the scope of the consent of section 2.02.

Cal-Murphy fails to establish error as to the fifth cause of action for trespass.

B. Judgment on the Pleadings on Ninth Cause of Action (Trespass by Grease)

The title of Cal-Murphy's ninth "and separate" cause of action targeted a "trespass caused by the deposit of animal and vegetable oils into plaintiffs' leased premises." The pleading incorporated allegations from paragraph 27, that the ducts were not properly constructed, did not contain access doors or cleanouts at proper intervals, were not properly sloped, and that due to the type of hood NOP/Hines installed and the absence of a "precipitator," "a film of animal and vegetable oils and grease has accumulated within the ducts that originate in Mixt Greens's space and travel through Murphy's Deli's space." It was further alleged that this accumulation of grease created a fire hazard.

The trial court granted NOP/Hines's motion for judgment on the pleadings as to this cause of action, and it ultimately denied Cal-Murphy leave to amend by declining its request to file a sixth amended complaint. Cal-Murphy contends the court erred in both respects.

1. Judgment on the Pleadings

In our review of an order granting judgment on the pleadings, we assume the truth of the well-pleaded allegations and review de novo whether those allegations state a cause of action. (*Bettencourt v. Hennessy Industries, Inc.* (2012) 205 Cal.App.4th 1103, 1111 (*Bettencourt*).)

To state a cause of action for trespass, a plaintiff must allege an unauthorized and tangible entry onto the land of another, which interfered with the plaintiff's *exclusive possessory rights.* (*Capogeannis v. Superior Court* (1993) 12 Cal.App.4th 668, 674; *Wilson, supra,* 32 Cal.3d at p. 233; *Spinks, supra,* 171 Cal.App.4th at pp. 1042-1043.)

Cal-Murphy failed to state a trespass cause of action, because it did not allege facts showing that the accumulated grease interfered with its exclusive possessory rights. The grease was alleged to have "accumulated *within the ducts.*" (Italics added.) Cal-Murphy had no exclusive possessory right to that area. Rather, the duct was installed for

Mixt Greens to vent its kitchen, and upon the duct's installation (long before any grease began to accumulate) it was expressly excluded from Cal-Murphy's leasehold pursuant to section 2.02 of the Lease. The court did not err in granting NOP/Hines's motion for judgment on the pleadings.

### 2. Denial of Leave to Amend

In its written opposition to NOP/Hines's motion for judgment on the pleadings and at the hearing on the motion, Cal-Murphy sought leave to amend the ninth cause of action if the motion was granted. Cal-Murphy did not, however, explain at the time *how* the pleading could be further amended to state a viable trespass claim. Nonetheless, the court gave Cal-Murphy the opportunity to present a proposed amendment, and the issue of whether leave to amend would be granted was not resolved until Cal-Murphy had submitted two proposed sixth amended complaints, which purported to amend its pleading not only in regard to the ninth cause of action for trespass, but in other respects as well. For clarity, we address here the court's denial of leave to file the proposed sixth amended complaint to the extent it sought to amend the ninth cause of action for trespass; we address the court's denial of leave to file the sixth amended complaint in other respects *post*.

We review the denial of leave to amend for an abuse of discretion. (*Bettencourt, supra,* 205 Cal.App.4th at p. 1111.) "The trial court abuses its discretion if it denies leave to amend when there is a reasonable possibility the defect in the pleading could be cured by amendment." (*Ibid.*)

Cal-Murphy contends it should have been allowed to allege new facts to "amplif[y] and augment[ ] the allegations relating to the trespass cause of action," facts it discovered after filing the fifth amended complaint, and "the return of David Silverglide, the principal of both Mixt Greens and MGR, and the arrival on the scene of MGR." It also urges that it should have been allowed to allege multiple violations of the Mechanical Code in the installation and maintenance of the ducts, and that NOP/Hines "knew with substantial certainty" that its conduct was wrongful or would injure Cal-Murphy.

17

Cal-Murphy fails to demonstrate how these allegations would cure the deficiencies in its pleading as to the trespass claim—particularly the defect that the allegations did not show interference with its exclusive possessory rights. Cal-Murphy's revised proposed sixth amended complaint did not allege a physical interference with Cal-Murphy's right to its leased premises (other than the allegation of the intrusion by the duct itself, which we discuss *ante*).[6] The court did not abuse its discretion in denying leave to amend.

Cal-Murphy contends it was misled by the trial court's earlier order overruling NOP/Hines's demurrer to the trespass claim. (See *Higgins v. Del Faro* (1981) 123 Cal.App.3d 558, 565.) Under the circumstances of this case, the court's prior order did not undermine the propriety of the court's grant of judgment on the pleadings and denial of leave to amend.[7]

### C. Denial of Leave to File Sixth Amended Complaint

We next turn to the court's order denying Cal-Murphy leave to file its revised proposed sixth amended complaint with respect to allegations other than the ninth cause of action for trespass, such as its proposed claims for injunctive relief based on nuisance, breach of the covenant of quiet enjoyment, violations of the Mechanical Code and, as to MGR, liability as Mixt Greens's successor. We begin with some additional background.

### 1. Background

By the time Cal-Murphy first submitted a proposed sixth amended complaint in April 2012, four years had elapsed since the original complaint and a March 2012 trial

---

[6]     Cal-Murphy's proposed pleading did allege that holes and openings in the exhaust duct permitted grease (as well as odors) to enter Murphy's Deli. But there is no allegation of physical damage caused by the grease (as required for trespass) or monetary damages incurred as a result of the grease specifically (as required for a damages claim). The grease buildup inside the duct was alleged to be a fire hazard.

[7]     Cal-Murphy repeatedly asserts that the trial court should have considered the grease aspect of its trespass claims in the context of NOP/Hines's summary adjudication motion. However, Cal-Murphy fails to show prejudice from disposing of the cause of action by judgment on the pleadings instead of by summary adjudication, particularly since Cal-Murphy is not entitled to relief as a matter of law, whether based on Cal-Murphy's allegations or based on its evidence.

18

date had already passed. At a hearing in May 2012, the court advised that Cal-Murphy's proposed pleading did not appear sufficient; however, it gave Cal-Murphy another chance.

On May 18, 2012, Cal-Murphy submitted a "Revised Proposed Sixth Amended Complaint." After a hearing, the trial court denied Cal-Murphy leave to file its revised proposed sixth amended complaint, on the ground that the new pleading would cause undue delay, inefficiencies, and prejudice.

The trial court stated: "The proposed sixth amended complaint is replete with problems, and while the standard for allowing for the filing of amended pleadings is somewhat liberal, that liberality wanes as the case proceeds, and the Court is supposed to take a closer and closer look at what is sought to be injected into the case as the length of the case increases and as you are close to trial. [¶] I believe that there are so many things wrong with the revised sixth amended complaint that it would result in undue delay in the efficient administration of the remaining portion of this case, and would cause prejudice to NOP Hines at least, perhaps to Mixt Greens. [¶] . . . [¶] [B]oth those parties have a right to have this case packaged up and resolved, be it through trial or something else. And it is clear that the sixth amended complaint, the revised sixth amended complaint, prejudices those parties' right to do so. It will result in inordinate delay and expense in resolving the issues here."

The court proceeded to support this conclusion: "By way of example, the sixth amended complaint seeks to inject claims which this Court has already eliminated from this case. The trespass claims were eliminated by my order of March 5, 2012, in the summary adjudication of the fifth cause of action and the motion for judgment on the pleadings, which was granted by an April 11, 2012 order, and the claim in the sixth amended complaint regarding a supposed duty on the part of the plaintiff [*sic*], which I resolved on the—in a December 12, 2011 order. . . . [¶] There's a claim for successor liability on the part of MG Restaurants, which I have already ruled has no place here. [¶] There's a big problem with the claimed injunction action, in light of what I believe has been represented by all parties to me, that the action which is the subject of the

19

injunction has ceased. What that will precipitate will be substantial discovery and that's part of what I think they want to—plaintiff wants to take Mr. Silverglide's deposition about, is why was the action terminated and will it resume again. That will take a long time to sort out. The "why" is probably irrelevant, but the "will it resume again" could conceivably find its place somewhere, at least in motion practice. Again, undue delay. [¶] And the bottom line is that this revised sixth amended complaint appears to render this case what it is that has been advocated by the defendants for some time to me, is the never-ending story. But we don't have a never-ending story. [¶] . . . [¶] In addition, it is not up to me to parse out the portions of the revised sixth amended complaint that may be viewed differently than other portions. The motion before me is a motion to file the proposed revised sixth amended complaint. And that is denied. Do not read what I just said as an invitation to cut out little pieces of it and try it again. [¶] *There is no question in my mind that what we have reached in this case is the stage where undue prejudice will befall the defendant if we continue to have a moving target for what this case is about. The defendant is entitled to a resolution of the claims here, and that's what is going to happen next*." (Italics added.)

### 2. The Court Did Not Abuse Its Discretion

Denial of leave to amend is proper where the proposed amendment is untimely or would cause prejudice in delaying the trial, increasing discovery or other litigation activity. (*Yee v. Mobilehome Park Rental Review Bd.* (1998) 62 Cal.App.4th 1409, 1428; *P&D Consultants, Inc. v. City of Carlsbad* (2010) 190 Cal.App.4th 1332, 1345.)

The record contains ample support for the conclusion that the proposed sixth amended complaint would have further and unduly delayed the trial in a case that had been pending for over four years. The claims against MGR would have caused more litigation activity, as would the attempted resurrection of claims on which the court had already ruled. Furthermore, the revised proposed sixth amended complaint would have resulted in another round of demurrers, since it arguably failed to allege facts that would

20

have cured the defects in the trespass claims and failed to state a claim for injunction or breach of the covenant of quiet enjoyment.[8]

Cal-Murphy contends the trial court was wrong to deny leave to file the sixth amended complaint based on its timing, particularly as to the cause of action for trespass and its new claim for breach of the covenant of quiet enjoyment, because (1) it had previously mentioned its intention to bring additional claims; (2) no additional discovery would be required with respect to the quiet enjoyment claim; and (3) in the absence of prejudice, amended pleadings should be permitted notwithstanding delay. (Citing *Kittredge Sports Co. v. Superior Court* (1989) 213 Cal.App.3d 1045, 1048.) Cal-Murphy also argues that its successor liability theory was different than what it had previously proposed to the court and, if that claim posed prejudice or delay, the claim could be severed.

The question, however, is not whether there was an argument in favor of allowing the revised proposed sixth amended complaint, but whether the denial of leave was so irrational and arbitrary as to constitute a prejudicial abuse of discretion. For our reasons stated *ante*, it was not.

---

[8] As to curing the defects in the trespass claims, NOP/Hines asserts that the proposed pleading did not allege facts sufficient to avoid enforcement of the exculpatory clause, or any unauthorized entry that the court had not already rejected as a trespass. As to the new causes of action, NOP/Hines asserts that Cal-Murphy's claim for injunctive relief based on a nuisance had no merit, because Mixt Greens had already stopped cooking in its space and the subject equipment had been removed. NOP/Hines also contends Cal-Murphy's claim for breach of the covenant of quiet enjoyment was defective because there was no allegation of conduct that rendered the premises unfit for its contemplated purposes or substantially affected Cal-Murphy's enjoyment of a material part of the premises (Civ. Code, § 1927). Further, the parties debate the effectiveness of the new allegations concerning the violations of the Mechanical Code. NOP/Hines urges that the code sections cited in the revised proposed sixth amended complaint apply to a "Type I hood" rather than the "Type II hood" installed in Mixt Greens's space, while Cal-Murphy counters that it alleged that a Type I hood should have been installed. In addition, MGR disputes the sufficiency of the allegations as to its liability as successor of Mixt Greens.

Cal-Murphy has failed to demonstrate error in the denial of leave to file its revised proposed sixth amended complaint.

D. Judgment on the Pleadings on Sixth Cause of Action (Nuisance)

Cal-Murphy's sixth cause of action asserted a nuisance claim. Cal-Murphy alleged, on information and belief, that NOP/Hines and other defendants knew or should have known that, as designed, the grill and cooking equipment used by Mixt Greens, as vented through the ducts, would emit offensive odors into Murphy's Deli and result in the accumulation of animal and vegetable oils in the ducts, and that there was technology available to alleviate the odors and accumulation of oils. Cal-Murphy sought damages, alleging interference with Cal-Murphy's use and enjoyment of the Murphy's Deli space.

NOP/Hines filed a motion for a case management order that would preclude Cal-Murphy from offering evidence of damages as to the claims remaining in the case (including this nuisance claim), on the ground that NOP/Hines's liability for those damages was precluded as a matter of law by an exoneration clause in section 7.04 of the Lease. The court granted NOP/Hines's motion by an amended case management order on June 18, 2012. On that same date, the court granted NOP/Hines's motion for judgment on the pleadings with respect to the nuisance cause of action.

Cal-Murphy contends the court's rulings were erroneous, because there were triable factual issues which, if resolved in Cal-Murphy's favor, would preclude enforcement of the exoneration clause. We first consider the scope of the clause, and then its enforceability.

1. Scope of the Lease Exoneration Clause (Section 7.04)

Section 7.04 of the Lease, entitled "Indemnity and Exoneration," provides in subsection (a): "Landlord shall not be liable for any loss, injury or damage to person or property of Tenant . . . which may arise through repair, alteration or maintenance of any part of the Project or failure to make any such repair or from any other cause whatsoever except as expressly otherwise provided in Section 7.06 [referring to condemnation]. Landlord shall not be liable for any loss, injury or damage arising from any act or omission of any other tenant or occupant of the Project, nor shall Landlord be liable

22

under any circumstances (including Landlord's negligence) for damage or inconvenience to Tenant's business or for any loss of income or profit therefrom." (The "Project" was defined in the Lease as the Building, the real property on which it is located, and improvements or facilities.)

By its terms, then, section 7.04(a) precludes liability to Cal-Murphy for damages arising from "repair, alteration or maintenance," from "*any other cause whatsoever*" (except condemnation), from "any act or omission of any other tenant" such as Mixt Greens, or "under any circumstances (including Landlord's negligence) for damage or inconvenience to Tenant's business or for any loss of income profit therefrom." (Italics added.) Its scope plainly included the damages Cal-Murphy sought from NOP/Hines in the nuisance claim alleged in the fifth amended complaint.

2. Enforceability of Section 7.04(a) (Civil Code Section 1668)

Cal-Murphy contends that section 7.04(a) is unenforceable under Civil Code section 1668 (section 1668), which provides: "All contracts which have for their object, directly or indirectly, to exempt anyone from responsibility for his own fraud, or *willful injury* to the person or property of another, or *violation of law*, whether willful or negligent, are against the policy of the law." (Italics added.)

Under section 1668, an exculpatory provision like section 7.04 may be enforced to preclude liability for negligence, where, as here, the contract does not involve the public interest. (*Tunkl v. Regents of University of California* (1963) 60 Cal.2d 92, 96; *McCarn v. Pacific Bell Directory* (1992) 3 Cal.App.4th 173, 178-179, 182; *Cregg v. Ministor Ventures* (1983) 148 Cal.App.3d 1107, 1111.) An exoneration clause is not enforceable, however, to preclude liability for an intentional wrong, gross negligence, or a violation of a statute or regulatory law, whether or not the contract itself affects the public interest. (*Health Net of California, Inc. v. Department of Health Services* (2003) 113 Cal.App.4th 224, 234-235; see *Hanna v. Lederman* (1963) 223 Cal.App.2d 786, 792 (*Hanna*) [tenant's negligence claim based on violation of municipal code regarding fire sprinkler systems was not precluded by landlord's exculpatory clause if the violation was the proximate cause of the tenant's loss]; *Halliday v. Greene* (1966) 244 Cal.App.2d 482,

23

488-490 [exculpatory clause did not preclude tenant's recovery against sublessor and builder, who knew or should have known he built a staircase in violation of safety order]; *Capri v. L.A. Fitness International, LLC* (2006) 136 Cal.App.4th 1078, 1084 [no public interest requirement for contract purporting to avoid liability for violation of law].)

Cal-Murphy urges that it presented evidence raising a factual question as to whether (1) NOP/Hines's conduct violated the Mechanical Code, and (2) NOP/Hines committed a willful injury. We begin with the standard of review.

### a. Standard of Review

As mentioned, the court's decision to exclude evidence of damages in light of section 7.04(a) was made in the context of NOP/Hines's requests for case management orders, which the court found akin to a motion in limine. Cal-Murphy urges that this procedural context dictates our standard of review, such that we must accept as true not only the allegations of the operative fifth amended complaint (as we would on a motion for judgment on the pleadings), but also the allegations of the revised proposed sixth amended complaint (which was never filed) and declarations submitted with respect to other motions (which were not discussed at the case management hearing).

For this proposition, Cal-Murphy provides the following quotation from *Dillingham-Ray Wilson v. City of Los Angeles* (2010) 182 Cal.App.4th 1396, 1402-1403 (*Dillingham*): "When all evidence on a particular claim is excluded based on a motion in limine, the ruling is subject to independent review as though the trial court had granted a motion for judgment on the pleadings or, if evidence was offered, a motion for nonsuit. [Citations.] We must disregard adverse conflicting evidence, view the record in the light most favorable to the plaintiff and determine whether the evidence and inferences were sufficient to support a judgment in the plaintiff's favor. [Citation.] *If any issues were decided during an in limine proceeding without evidence, we will accept as true the evidence referenced in the plaintiff's arguments and offers of proof.*" (Italics added.)

*Dillingham* is distinguishable from the matter at hand. It is true that, at the hearing on the requested case management orders, the court likened NOP/Hines's set of requests to an in limine motion. But throughout the hearing, the court and the parties treated *this*

24

particular portion of NOP/Hines's requests *as a motion for judgment on the pleadings*, debating whether the *allegations of the fifth amended complaint* could be read to assert intentional or grossly negligent conduct so as to preclude application of section 7.04(a). Indeed, when NOP/Hines's attorney and the court insisted that the question was what was alleged in the fifth amended complaint, and when the court ruled that the fifth amended complaint did not contain sufficient allegations of intentional or grossly negligent conduct to preclude enforcement of section 7.04(a), Cal-Murphy did not contend the court was applying the wrong standard.

At any rate, even if *Dillingham* compelled us to accept as true the evidence referenced in arguments and offers of proof at the hearing, Cal-Murphy did not make any adequate offer of proof with specific evidence at the case management hearing.[9] (See Evid. Code, § 354.) And, to the extent Cal-Murphy now tries to rely on allegations cited from its revised proposed sixth amended complaint, Cal-Murphy never obtained leave to file that pleading and those allegations are not part of the case.

We therefore review the court's order based on the allegations of the operative fifth amended complaint.

### b. Violations of the Mechanical Code

Cal-Murphy contends section 7.04(a) could not be enforced because NOP/Hines violated provisions of the Mechanical Code. Its argument is unpersuasive.

In the first place, Cal-Murphy did not argue that violations of the Mechanical Code by NOP/Hines rendered section 7.04(a) unenforceable in its written opposition to the case management order. Nor did it raise this argument at the May 11, 2012, hearing on NOP/Hines's motion for the case management order. Instead, Cal-Murphy's theory was that section 7.04(a) did not apply because NOP/Hines's conduct was intentional or

---

[9]     Cal-Murphy's attorney said that he had "experts on top of experts that will testify that you've got to know that you can't do what they did" and "I've got evidence, I've experts that are going to come in here and say that anybody who is knowledgeable about this stuff, that they knew that this was going to happen." But counsel did not refer by name or specific substance to the declarations that Cal-Murphy now contends establish a triable factual issue.

25

grossly negligent (discussed *post*). Because Cal-Murphy did not assert the argument, it is unavailing here.

Furthermore, the allegations in the nuisance cause of action in the fifth amended complaint did not actually base liability on a violation of the Mechanical Code. Instead, the pleading asserted that NOP/Hines created a nuisance because it knew or should have known that Mixt Greens's equipment would emit odors and grease. Since no code violation is alleged as the proximate cause of Cal-Murphy's damages, section 1668 does not bar enforcement of the exoneration clause.[10] (*Hanna, supra*, 223 Cal.App.2d at pp. 788, 792.)

Cal-Murphy's resort to allegations in its revised proposed *sixth* amended complaint and an argument it made to the court in seeking leave to file *that* pleading, is also unavailing. The sections of the Mechanical Code cited by Cal-Murphy do not apply to the Type II duct NOP/Hines allowed Mixt Greens to install, but to Type I hoods. And while Cal-Murphy retorts that a Type I hood should have been installed, it also alleged that the city approved the installation. At any rate, as discussed *ante*, Cal-Murphy's allegations in its proposed pleading are immaterial, since they are not part of the case.

### c. *Willful Injury*

Cal-Murphy next contends section 7.04(a) is unenforceable under section 1668 because NOP/Hines inflicted "willful injury to the person or property of another." (§ 1668.) The contention has no merit.

In paragraph 47 of its fifth amended complaint, Cal-Murphy alleged in its nuisance claim that NOP/Hines "knew or reasonably should have known" that Mixt

---

[10]     The fifth amended complaint did generally mention purported violations of ordinances and laws, not for the purpose of establishing liability, but so the emissions might be described as a public type of nuisance. It also vaguely alleged elsewhere that NOP/Hines knew or should have known that a different hood was required by "applicable Codes of the City and County of San Francisco" notwithstanding the city's *approval* of the duct installation. In light of the city's alleged approval, the pleading alleges a determination of compliance with applicable codes, not a violation. In any event, the nuisance cause of action was not predicated on a violation of the Mechanical Code.

26

Greens's cooking equipment would vent offensive odors through the ducts and accumulate oil in the ducts. Elsewhere the fifth amended complaint alleged that NOP/Hines "knew, or reasonably should have known," that different equipment was required than what the city had approved. These are allegations of *negligence*, however, not "willful injury" to the person or property of another for purposes of section 1668. They do not give rise to an inference of intentional acts or gross negligence in inflicting injury, but mere negligence in allowing Mixt Greens to install certain equipment. Nor is there any allegation that NOP/Hines had an intent to injure or knowledge that injury was substantially likely to occur.

Accordingly, the court did not err in issuing its case management order that evidence of damages should be excluded at trial or in granting NOP/Hines's motion for judgment on the pleadings on Cal-Murphy's nuisance cause of action.[11]

E. Summary Adjudication of Third Cause of Action (Good Faith Covenant)

In its third cause of action, Cal-Murphy alleged numerous breaches of the covenant of good faith and fair dealing implied in the Lease. NOP/Hines moved for summary adjudication, which the trial court granted. Cal-Murphy now contends the court erred as to three alleged breaches by NOP/Hines: (1) leasing space to Mixt Greens,

---

[11] Cal-Murphy further contends the court erred because it decided the section 7.04 issue in the context of NOP/Hines's requests for case management orders, claiming the use of in limine motions in lieu of other dispositive motions has been criticized. (Citing *R & B Auto Center, Inc. v. Farmers Group, Inc.* (2006) 140 Cal.App.4th 327, 371 (conc. opn. of Rylaarsdam, Act. P.J.); *Amtower v. Photon Dynamics, Inc.* (2008) 158 Cal.App.4th 1582, 1593-1594.) The court's case management order was within its authority to manage complex litigation matters. (See Code Civ. Proc., §§ 128, 187; Govt. Code, § 68607; *Rutherford v. Owens-Illinois, Inc.* (1997) 16 Cal.4th 953, 966-967; *Hernandez v. Superior Court* (2003) 112 Cal.App.4th 285, 295; *Cottle v. Superior Court* (1992) 3 Cal.App.4th 1367, 1381.)

27

(2) delaying installation of a blade sign for Murphy's Deli, and (3) rejecting Murphy's Deli's request to display a sandwich board.[12]

The implied covenant of good faith and fair dealing is intended to assure that the parties receive the benefit of the bargain they reached in their written agreement. It is therefore "limited to assuring compliance with the express terms of the contract," and it "cannot be extended to create obligations not contemplated in the contract." (*Racine & Laramie, Ltd. v. Department of Parks & Recreation* (1992) 11 Cal.App.4th 1026, 1032.) Nor can the covenant be used to prohibit conduct that the written agreement expressly permits. (*Carma Developers (Cal.), Inc. v. Marathon Development California, Inc.* (1992) 2 Cal.4th 342, 374, 376 (*Carma*); *Wolf v. Walt Disney Pictures & Television* (2008) 162 Cal.App.4th 1107, 1120 (*Wolf*).) With these principles in mind, we turn to Cal-Murphy's claims.

### 1. Lease to Mixt Greens

Cal-Murphy alleged that NOP/Hines breached the implied covenant of good faith by leasing adjacent space in the Building to Mixt Greens, which Cal-Murphy characterized as a competing restaurant.

In its summary adjudication motion, NOP/Hines contended it was allowed to lease to Mixt Greens under the terms of the Lease. NOP/Hines pointed to Lease section 3.03(c), entitled "No Exclusivity; Menu," which stated that Cal-Murphy had no exclusive right to operate a restaurant in the Building: "Tenant acknowledges that Tenant does not have the exclusive right to operate a restaurant or a sundry retail establishment in the Project or the exclusive right to sell any item which Tenant is permitted to sell hereunder."

In addition, NOP/Hines pointed to sections in the Lease stating that NOP/Hines could lease space to any tenant it wanted. Section 5.07(j) of the Lease read: "Without

---

[12] NOP/Hines moved for summary adjudication based on Cal-Murphy's fourth amended complaint. While the summary adjudication motion was pending, Cal-Murphy filed its fifth amended complaint. The court concluded it could still rule on the summary adjudication motion, because the fifth amended complaint did not change the relevant allegations in the fourth amended complaint. No error is asserted in this regard.

liability to Tenant, *Landlord shall have the right to offer and to lease space in the Building, or in any other property, to any party,* including without limitation to any party with whom Tenant desires to negotiate, concerning assignment or subletting the Leased Premises, or any portion thereof." (Italics added.) And section 1.27 referenced NOP/Hines's right to lease to any tenant of its choice with the phrase "without Limiting *Landlord's right to lease any portion of the Building to a tenant of Landlord's choice*." (Italics added.)

Cal-Murphy opposed the summary adjudication motion, contending the Lease could be construed to bar NOP/Hines from leasing to a competitor in light of extrinsic evidence considered under the parol evidence rule and the doctrine of practical construction. Specifically, Cal-Murphy offered evidence of statements made on behalf of NOP/Hines, during the negotiation of the Lease, that NOP/Hines did not intend to install a competitive operation and did not grant an exclusivity clause because it wanted to be able to install a complementary restaurant. In addition, Cal-Murphy offered evidence of NOP/Hines's conduct after the execution of the Lease, contending it reflected an understanding that NOP/Hines could lease only to complementary restaurants: Karen Hoke, the broker attempting to find a tenant for the space next to Mixt Greens, had targeted a sushi restaurant as a complementary operation and turned down a couple of prospective tenants because their menu overlapped with Murphy's Deli; and there was an inquiry within NOP/Hines as to the potential for installing a sandwich and coffee operation next to Murphy's Deli.

The trial court provisionally considered the extrinsic evidence, but ultimately concluded the Lease was not reasonably susceptible to the interpretation Cal-Murphy asserted. Accordingly, it granted summary adjudication on Cal-Murphy's claim for breach of the good faith covenant in leasing to Mixt Greens.

The court did not err. As we shall explain, the Lease did not forbid NOP/Hines from leasing to a competitor of Murphy's Deli, the evidence of statements concerning NOP/Hines's *intent* to lease to a complementary restaurant did not render the provisions

29

of the Lease ambiguous, and attempts to lease to a complementary restaurant did not reflect an understanding that NOP/Hines could *only* lease to a complementary restaurant.

### a. The Lease to Mixt Greens Was Permitted by the Lease

Sections 3.03(c) and 5.07(j) of the Lease are express and unambiguous. Cal-Murphy had no right to operate the only restaurant in the Building, and NOP/Hines could lease space to any tenant it wanted (as confirmed under the assignment and subletting provisions of section 5.07). At the very least, no provision of the Lease precluded NOP/Hines from leasing to a competitor of Murphy's Deli or required NOP/Hines to lease only to a complementary restaurant. Because the implied covenant of good faith cannot create an obligation not contemplated by the contract, or prohibit conduct the written agreement permits, Cal-Murphy has no cause of action for breach of the covenant based on leasing space to Mixt Greens. (See *Carma, supra,* 2 Cal.4th at p. 374; *Stockton Dry Goods Co. v. Girsh* (1951) 36 Cal.2d 677, 680-681 [a covenant restricting a lessor's use of retained property must be shown by clearly stated intention].)

### b. Parol Evidence Did Not Support a Contrary Interpretation

When parties offer two plausible interpretations of the contractual language, the language is ambiguous and parol evidence is admissible to aid in its interpretation. (*Casa Herrera, Inc. v. Beydoun* (2004) 32 Cal.4th 336, 343.) In some instances, parol evidence may render an ostensibly unambiguous contract ambiguous. (*Abers v. Rounsavell* (2010) 189 Cal.App.4th 348, 356-357 [ambiguity exists only "when contractual language reasonably may be susceptible to more than one interpretation based upon the offered evidence regarding the material facts"].) If the parol evidence is in conflict, there is a question of fact that precludes summary judgment. (*WYDA Associates v. Merner* (1996) 42 Cal.App.4th 1702, 1710.)

Here, the extrinsic evidence proffered by Cal-Murphy did not make the Lease ambiguous. The evidence that NOP/Hines expressed an intent to lease to a complementary establishment, and not to a competitor of Murphy's Deli, was simply a statement of what NOP/Hines intended to do, *not what the Lease required it to do*. There was no evidence that NOP/Hines made the statements based on its understanding

of the Lease, believed or represented it was precluded by the Lease from leasing to whomever it wanted, or thought the Lease language really meant that NOP/Hines could lease only to a complementary operation.  Simply put, despite the evidence Cal-Murphy presented, the Lease is not susceptible of the meaning Cal-Murphy asserts.

*c. The Practical Construction Doctrine Does Not Apply*

Under the practical construction doctrine, the parties' acts after signing the contract, but before a controversy has arisen, may be considered in discerning their understanding of the contract language.  (*Warner Constr. Corp. v. City of Los Angeles* (1970) 2 Cal.3d 285, 296-297.)

Here, the practical construction doctrine does not assist Cal-Murphy.  In the first place, the doctrine cannot be invoked where the contract is unambiguous and the proffered evidence does not support an interpretation to which the contract is reasonably susceptible. (See *Crestview Cemetery Assn. v. Dieden* (1960) 54 Cal.2d 744, 754.)

Moreover, Cal-Murphy's evidence does not show the parties' construction of the Lease.  Although NOP/Hines was looking for a tenant with a menu complementary to the menu of Murphy's Deli, there is no evidence it did so based on an interpretation of *the Lease*, or that NOP/Hines believed it was required under the Lease to find a complementary restaurant.  Brownstone said, "[W]e had *hoped* to find a food service that would . . . [¶] . . . complement the food service that Murphy's provided, *so that the tenants would have a variety of food to choose from.*"  (Italics added.)  And while broker Hoke sought a complementary restaurant for the space adjacent to Murphy's Deli, there is no evidence she felt constrained to do so by her understanding of the Lease terms.

The court did not err in granting summary adjudication as to the Mixt Greens lease.

2.  Blade Sign

Cal-Murphy also alleged that NOP/Hines breached the implied covenant of good faith by delaying the installation of a blade sign that advertised Murphy's Deli.  Specifically, it alleged that in January or February 2006, NOP/Hines's building manager (Brownstone) advised Cal-Murphy's operations manager (Katwan) that NOP/Hines

31

would install a blade sign at its own cost. This statement, Cal-Murphy alleged, modified Lease section 4.04 (which gave the tenant a right to a sign on the exterior of the Building, subject to the Landlord's approval, at the tenant's cost), by an "executed oral agreement." Cal-Murphy further alleged that NOP/Hines obtained artwork from Cal-Murphy, granted approval, and notified Cal-Murphy in February 2007 that the sign would be installed within four weeks, but did not install the sign until April 2008. The sign was installed at NOP/Hines's expense.

In its motion for summary adjudication, NOP/Hines argued there was no breach of the covenant of good faith implied in the Lease, since section 4.04 pertained to signs installed by *Cal-Murphy*, not NOP/Hines. Furthermore, pursuant to section 7.14, the Lease could not be modified orally, and in any event the Lease was not modified by an executed oral agreement.

In opposition to the summary adjudication motion, Cal-Murphy argued there was a triable issue whether the delay in installing the blade sign deprived Cal-Murphy of its right to a sign under section 4.04, and NOP/Hines waived or was estopped to rely on the condition that Cal-Murphy pay for the sign or provide the design. Cal-Murphy presented evidence to support the facts alleged in its pleading, as well as a declaration from Katwan that NOP/Hines declined installation of the sign in 2007 unless Cal-Murphy paid for it, but relented later that year.

The court determined that Cal-Murphy's evidence of waiver and estoppel was insufficient to modify section 4.04, and Cal-Murphy had no claim for breach of the implied covenant based on a delay in installing the blade sign.

The grant of summary adjudication was not erroneous. As we discuss next, the Lease did not require NOP/Hines to install any sign for Cal-Murphy at NOP/Hines's expense, the Lease permitted modification only in writing, and Cal-Murphy's evidence

did not create a triable issue of material fact that it could recover *under the Lease* for NOP/Hines's delay in installing a sign at NOP/Hines's expense.[13]

### a. The Lease Did Not Compel NOP/Hines to Install a Blade Sign

Section 4.04 of the Lease, entitled "Graphics and Signage," gave Cal-Murphy a right to install an exterior sign, at its own expense, subject to NOP/Hines's approval. Section 4.04 provided in relevant part: *"Tenant shall have the right to install, at Tenant's sole cost and expense,* a sign on the exterior surface of the front entry of the Leased Premises with Tenant's trade name of such design, size and color, and in such location on the Leased Premises as approved by Landlord in advance." (Italics added.) Section 4.04 does not provide that *NOP/Hines* would design a blade sign for Cal-Murphy, install it, or pay for it.

Because the Lease does not require NOP/Hines to install a sign for Cal-Murphy at its own expense, and the implied covenant of good faith can neither create an obligation not contemplated by the Lease or prohibit conduct the Lease permits, Cal-Murphy has no cause of action for breach of the implied covenant based on NOP/Hines's installation of its own designed sign for Cal-Murphy.

### b. Cal-Murphy's Reliance on Civil Code Section 1698 is Misplaced

Cal-Murphy contends that, even though section 7.14 precluded an oral modification of the Lease, Civil Code section 1698 (section 1698) permits an oral modification by waiver or estoppel, and Cal-Murphy presented sufficient evidence to create a "triable issue that NOP/Hines waived or are estoped to rely on the provisions in the Lease that Cal-Murphy must pay for any sign."

At the outset, we point out that section 1698 does not assist Cal-Murphy. Section 1698 provides that a contract in writing may be modified by a contract in writing, an

---

[13] Cal-Murphy does *not* allege or contend that NOP/Hines breached a separate oral agreement to install a blade sign for Cal-Murphy, at NOP/Hines's expense, in a timely manner, independent from the provisions of the Lease. Instead, it contends that NOP/Hines is precluded by waiver or estoppel from asserting rights under the Lease, which thereby modifies the Lease, such that NOP/Hines's delay in installing the sign breached the implied covenant under the Lease (as opposed to any express term of the Lease), resulting in a loss of customers.

33

executed oral agreement, or an oral agreement supported by new consideration (unless the written contract provides otherwise). (§ 1698, subds. (a)-(c).) None of those provisions applies here.[14] Instead, Cal-Murphy relies on subdivision (d) of the statute, which reads: "Nothing *in this section* precludes in an *appropriate* case the application of rules of law concerning estoppel . . . [or] waiver of a provision of a written contract, or oral independent collateral contracts." (Italics added.) In other words, although section 1698 may not *bar* the application of waiver and estoppel in an otherwise appropriate situation, it does nothing on its own to establish the waiver and estoppel Cal-Murphy asserts. We therefore turn to Cal-Murphy's evidence.

### c. Evidence of Waiver

Waiver is the voluntary relinquishment of a known right. (See, e.g., *Utility Audit Co., Inc. v. City of Los Angeles* (2003) 112 Cal.App.4th 950, 959 ["Waiver requires an existing right, benefit, or advantage, actual or constructive knowledge of the right's existence, and either an actual intention to relinquish it or conduct so inconsistent with any intent to enforce the right as to induce a reasonable belief that it has been relinquished"].)

Here, Cal-Murphy presented no evidence from which a reasonable trier of fact could conclude that NOP/Hines intended to waive its rights under section 4.04 of the Lease. In offering to install a sign *for* Cal-Murphy at its own cost, NOP/Hines created a separate arrangement for signage; there is no evidence that it was intending to waive its right under section 4.04 not to pay for a sign that *Cal-Murphy* would seek to install.

Furthermore, even if NOP/Hines had waived its right under section 4.04 to require Cal-Murphy to pay for a sign that Cal-Murphy sought to install, Cal-Murphy

---

[14] Cal-Murphy did not pursue its argument in the fourth amended complaint that the Lease was modified by an executed oral agreement. The fifth amended complaint alleged that NOP/Hines either waived section 4.04 insofar as it required Cal-Murphy to pay for, design, or obtain approval for the blade signs, or was estopped to deny that the Lease was modified to eliminate any requirement that Cal-Murphy pay for, design, or obtain approval for the sign.

never sought to install one of its own signs. Instead, it opted to wait until NOP/Hines installed the blade sign at NOP/Hines's own expense.

Lastly, even if NOP/Hines had waived its right under section 4.04 to require Cal-Murphy to pay for *any* Murphy's Deli sign—whether installed by Cal-Murphy or installed by NOP/Hines—NOP/Hines, not Cal-Murphy, paid for the sign. In short, any factual issue over a possible waiver does not support Cal-Murphy's claim for breach of the implied covenant of good faith.

### d. Evidence of Estoppel

Similarly, Cal-Murphy's estoppel evidence does not establish a triable issue of material fact. Even if NOP/Hines was estopped from asserting its right under section 4.04 of the Lease not to pay for a sign, section 4.04 only pertained to signage that *Cal-Murphy* might choose to install, and Cal-Murphy never attempted to install a sign. And even if Cal-Murphy's evidence was sufficient to estop NOP/Hines from claiming it did not have to pay for the installation of *any* sign—including the blade sign that NOP/Hines was making—it is undisputed that NOP/Hines *did* pay for the blade sign.

Nor is there any basis for concluding, under a slightly different approach, that NOP/Hines should be estopped from denying that the Lease was modified to eliminate the requirement that Cal-Murphy pay for, design, or obtain approval for the sign. There is no evidence that NOP/Hines acted in a manner that would justifiably lead Cal-Murphy to believe that the Lease was being modified in that regard.

The court did not err in granting summary adjudication as to the blade sign.

### 3. Sandwich Board

Cal-Murphy alleged that NOP/Hines breached the implied covenant of good faith and fair dealing by permitting it to display a sandwich board for only five weeks or so in April and May 2005, while later allowing Mixt Greens to display one for a longer period.

In its motion for summary adjudication, NOP/Hines denied liability based on Lease provisions that gave it discretion to allow such a sign or not. Specifically, NOP/Hines pointed to a part of section 4.04, which read: "Tenant shall not, without the prior written consent of Landlord *(which may be given or withheld in the sole discretion*

35

*of Landlord),* place or permit to be placed, . . . any sign, advertising material or lettering upon the exterior of the Leased Premises." (Italics added.) In addition, section 2.02 of the Lease provided that, subject to certain exceptions, "Landlord shall have the sole and exclusive right to possession and control of the Common Areas and all other areas of the Project outside the Leased Premises." Given this discretion, NOP/Hines argued, Cal-Murphy could not state a claim based on a breach of the implied covenant of good faith as a matter of law.

In opposing summary adjudication, Cal-Murphy urged that NOP/Hines's discretion under section 4.04 applied only to signs on the exterior or interior surfaces of the Building (not to a sandwich board on the sidewalk), and section 2.02 allowed NOP/Hines to approve the sandwich board. Cal-Murphy also presented the following evidence: building manager Brownstone told the on-site manager for Murphy's Deli (Dudum) that Murphy's Deli could use a sandwich board; Dudum had a sandwich board made and showed it to another building manager, who allowed Cal-Murphy to display the sign for roughly five weeks in April and May 2005; and in or after April 2008 Mixt Greens used a sandwich board for a longer period.

The court granted summary adjudication on the ground that, in light of section 7.14 requiring Lease modifications to be in writing, extrinsic evidence did not create a material triable issue concerning the signage provisions.

### a. No Breach of the Implied Covenant in the Lease

Where a contract expressly grants a party sole discretion over a decision, the exercise of that discretion is not limited by the implied covenant of good faith. (*Thrifty Payless, Inc. v. Mariners Mile Gateway, LLC* (2010) 185 Cal.App.4th 1050, 1062 ["[T]he implied covenant cannot be used to limit or restrict an express grant of discretion to one of the contracting parties"]; *Third Story Music, Inc. v. Waits* (1995) 41 Cal.App.4th 798, 808 ["[C]ourts are not at liberty to imply a covenant directly at odds with a contract's express grant of discretionary power"]; *Wolf, supra,* 162 Cal.App.4th at pp. 1120-1123 [party's right to license franchise as it " 'saw fit' " is not limited by implied covenant, because implied covenant cannot limit unfettered discretion granted

36

by contract]; cf. *Carma, supra*, 2 Cal.4th at p. 372 [noting that party must exercise discretionary power in "good faith"; that is, a good faith pursuit of its rights and objectives under the contract].)

Here, the Lease granted NOP/Hines sole discretion to decide whether, and to what extent, the likes of a sandwich board would be allowed on the premises: section 4.04 granted NOP/Hines authority to approve or reject, within its "sole discretion," any sign "upon the exterior of the Leased Premises"; and section 2.02 gave NOP/Hines the "sole and exclusive right" to control common areas and areas "outside" the leased premises. Cal-Murphy asked NOP/Hines's permission to display a sandwich board and NOP/Hines decided to grant permission for about five weeks. The implied covenant cannot be invoked to limit NOP/Hines's discretionary choice under these facts.

### b. No Triable Issue of Material Fact

Cal-Murphy tries to create a triable issue by contending section 4.04 was modified by the parties' oral agreement, NOP/Hines is estopped from denying that it approved the installation of a sandwich board, and NOP/Hines waived the Lease provisions relevant to sandwich boards.

Cal-Murphy's arguments lack merit. In the first place, akin to our analysis *ante* regarding the blade sign, we find no triable issue concerning a modification of section 4.04 or a waiver or estoppel precluding reliance on its terms: there is no evidence that NOP/Hines intended to relinquish its discretionary authority under the Lease with respect to Cal-Murphy's proposed sandwich board. Moreover, even if NOP/Hines's statements to Dudum meant NOP/Hines was precluded by waiver or estoppel from withholding approval of the sandwich board, the result would simply be that NOP/Hines was entitled to display the sandwich board consistent with NOP/Hines's statements: that is, in April to May 2005. And that was precisely what Cal-Murphy was allowed to do.

Accordingly, the court did not err in granting summary adjudication on Cal-Murphy's third cause of action for breach of the implied covenant of good faith and fair dealing. As this exhausts Cal-Murphy's attacks on the judgment entered in favor of NOP/Hines, the judgment will be affirmed.

F.  Dismissal of Action Against MGR

The trial court sustained MGR's demurrer to the fifth amended complaint on the ground that no viable cause of action was alleged against it, and denied leave to amend. The court subsequently denied Cal-Murphy's motion for relief from that order.  Cal-Murphy contends the court erred, both in denying leave to amend and in denying relief.

1.  Sustaining Demurrer Without Leave to Amend

*a. Background*

In February 2012, four years after commencing this action, Cal-Murphy substituted MGR for Doe One as to the fifth, sixth, seventh and ninth causes of action in the fifth amended complaint as successor to Mixt Greens.

On March 28, 2012, MGR filed a demurrer to the causes of action asserted against it in the fifth amended complaint.  A hearing was set for May 7, 2012.  *Cal-Murphy did not file any opposition to the demurrer.*

Meanwhile—as we have described *ante*—in April 2012 the court granted NOP/Hines's motion for judgment on the pleadings as to the ninth cause of action (trespass by grease) and advised that it would consider Cal-Murphy's amendment of that cause of action on May 7, 2012.  On April 23, 2012, Cal-Murphy filed a declaration by its attorney, entitled "Declaration of Herbert W. Yanowitz In Connection With Proposed Sixth Amended Complaint," attaching a proposed sixth amended complaint that contained not just an amendment to the trespass claim, but new allegations as to MGR as well.

On April 30, 2012, MGR filed a reply brief asserting that its demurrer should be sustained in light of Cal-Murphy's failure to file any opposition.  MGR also argued that leave to amend should not be granted, in light of deficiencies in the proposed sixth amended complaint, its novel allegations, its failure to allege any viable cause of action, and the burden and prejudice it would cause in the case.

At the hearing on MGR's demurrer on May 7, 2012, the court announced its tentative ruling:  "In light of failure to file an opposition, the demurrers to the Fifth Amended Complaint are all sustained without leave to amend."

38

Cal-Murphy's attorney, Herbert Yanowitz, argued that he did not file an opposition to the demurrer because (1) he thought Cal-Murphy could file an amendment as a matter of right; (2) filing an amended complaint would be preferable to filing an opposition to the demurrer because it "saves a step and saves paper"; and (3) the proposed sixth amended complaint was in the record, submitted in connection with the proceedings on the ninth cause of action for trespass. Yanowitz also asserted his mistake should be excused.

The court pointed out that Cal-Murphy was not entitled to amend the fifth amended complaint as of right, and in any event Yanowitz did not *file* any amendment to the claims against MGR (and could not have because he needed leave to file a sixth amended complaint). The court further noted that Yanowitz did not make a mistake in this regard, but a "strategic volitional decision based on saving paper or whatever it was," which did not justify the failure to file a response to the demurrer. The court then discussed the interests of justice: "All of the parties have a right to justice in this courtroom. And all of the parties have a right to an efficient articulation of what the claims are against them and a reasonable progress towards the resolution of those, free of undue expense and . . . time." The court added: "As a matter of fact, we have discussed on the record my concerns that many of the claims that you might have against [MGR] don't belong in this case. And also my concern that this case is going to go to trial soon or some other disposition soon, and that we will not have the never ending story of your continuing claims against these people." Yanowitz proceeded to describe the new facts in the proposed sixth amended complaint, but he did not demonstrate how they would establish a viable claim against MGR.

The court ruled that the demurrers would be sustained without leave to amend and issued a written order that same day. The court thereafter entered a dismissal of MGR.

### b. *No Abuse of Discretion*

Cal-Murphy does not dispute that the fifth amended complaint failed to state a cause of action against MGR. Instead, it contends the court erred in not granting Cal-Murphy leave to amend the pleading as to MGR.

39

We review a denial of leave to amend for an abuse of discretion. (*Debro v. Los Angeles Raiders* (2001) 92 Cal.App.4th 940, 946.) To prevail on appeal, an appellant must usually demonstrate a reasonable possibility that the defects in the complaint can be cured by amendment. (E.g., *Schifando v. City of Los Angeles* (2003) 31 Cal.4th 1074, 1081.) Thus, Cal-Murphy must show how the amended complaint could further be amended and how, as so amended, the pleading would state a cause of action. (*Buller v. Sutter Health* (2008) 160 Cal.App.4th 981, 985-986.)

The court did not abuse its discretion in denying leave to amend. In the first place, Cal-Murphy did not demonstrate that it could allege a viable claim against MGR. There was no filing in the demurrer proceeding setting forth a basis for its new allegations; and even after MGR argued in its reply papers that leave to amend should not be granted due to the substantive deficiencies of the proposed sixth amended complaint and its prejudicial impact on the proceedings, Cal-Murphy did not explain at the demurrer hearing how its proposed sixth amended complaint stated a cause of action against MGR.

Furthermore, it became apparent at the demurrer hearing that Cal-Murphy's proposed amendment of the fifth amended complaint as to MGR would be a sixth amended complaint affecting multiple parties. As such, granting leave to amend as to MGR would not have been akin to the initial amendment liberally permitted early in a lawsuit. Instead, it implicated concerns for other parties and the case overall. As discussed *ante*, it was not an abuse of discretion to conclude that the timing of the proposed amendment was unduly prejudicial.

Cal-Murphy contends the court sustained the demurrer without leave to amend solely because Cal-Murphy had not filed an opposition, and did *not* consider the allegations in the proposed sixth amended complaint or whether Cal-Murphy could cure the deficiencies in its fifth amended complaint. Not so. Given the court's comments at the hearing as a whole, the better interpretation is that the court declined to grant leave to amend because, due to the absence of any opposition being filed, no argument had been made in the demurrer proceeding as to the *propriety* of any proposed amendment, and the

40

court's concerns had not been addressed.[15]  In any event, we may uphold the court's decision on any valid ground, whether the court expressly relied on it or not. (*D'Amico, supra*, 11 Cal.3d at pp. 18-19.)

Lastly, Cal-Murphy argues that the trial court did not correctly address the question of prejudice:  it claims NOP/Hines was "effectively out of the case" and the only new discovery would be related to "successor liability."  While Cal-Murphy may have had such an argument for granting leave to amend, it does not establish that the trial court abused its discretion in ruling otherwise.

## 2. Denial of Motion for Relief

Cal-Murphy sought relief from the order sustaining MGR's demurrer without leave to amend (and the dismissal of MGR) under subdivision (b) of Code of Civil Procedure section 473 (section 473).  That statute gives the court discretion to provide relief from an order in certain circumstances, and mandates relief in others.

### a. Background

After sustaining MGR's demurrer but before receiving Cal-Murphy's section 473 motion, the court held a continued hearing on Cal-Murphy's request to file its proposed sixth amended complaint.  The court remarked that the proposed pleading appeared inappropriate, but gave Cal-Murphy another chance.  On May 15, 2012, Cal-Murphy filed a declaration of its attorney, Herbert Yanowitz, attaching a revised proposed pleading.  As discussed *ante*, the court denied Cal-Murphy's motion to file the revised proposed sixth amended complaint on May 18.

---

[15]  At the outset of the demurrer hearing, the court indicated the tentative ruling was "in light of [the] failure to file an opposition," and at the end of the hearing it announced that the tentative ruling would stand.  But during the demurrer hearing, the court also spoke at length regarding the interests of justice and the court's substantive concerns about Cal-Murphy's claims.  Similarly, at the hearing on the ensuing motion for relief under Code of Civil Procedure section 473, the court suggested the demurrer had been sustained without leave to amend due to Cal-Murphy's inappropriate claims, but later at the hearing indicated it was "for failure to file a response."  These statements are not in conflict, but signal that the demurrer was sustained without leave to amend because there was no opposition filed and *therefore* no demonstration of why leave to amend should be granted.

41

On May 24, 2012, Cal-Murphy filed its section 473 motion for relief from the order sustaining MGR's demurrer to the fifth amended complaint without leave to amend (and the judgment of dismissal), claiming they were taken due to mistake, inadvertence, surprise or excusable or inexcusable neglect. In a declaration, attorney Yanowitz averred that he thought he could amend the fifth amended complaint as to MGR without court permission pursuant to Code of Civil Procedure section 472, elected not to file an opposition to the demurrer, but filed a "Declaration . . . in Connection With Proposed Sixth Amended Complaint," which attached the proposed pleading with claims against all parties.[16]

The hearing on Cal-Murphy's section 473 motion took place on June 18, 2012. The court noted its earlier determination that the proposed sixth amended complaint was not appropriate to file: it contained many matters the court had already decided; other claims were inappropriate to add to the case, at least so late in the proceedings; and the claims against MGR went beyond merely adding a successor entity as a Doe defendant. In light of this history, the court found, it was not a mistake or inadvertence that caused the demurrer to the fifth amended complaint to be sustained, but the attempt to add MGR into the case with inappropriate claims and to file a sixth amended complaint that did not properly reflect prior court orders.

Cal-Murphy insisted that the demurrer had actually been sustained without leave to amend because no opposition was filed, and there was no discussion at the demurrer hearing of the impropriety of the claims in the proposed sixth amended complaint. The court noted that Cal-Murphy had not attached a new proposed pleading to its request for section 473 relief, but declarations attaching the revised proposed sixth amended complaint that the court had already found inappropriate. Cal-Murphy confirmed it was standing pat on this rejected pleading.

---

[16]    The opposition to the demurrer was due on April 24; Yanowitz filed his declaration and proposed sixth amended complaint on April 23, but that was because he had 10 days from the ruling on the ninth cause of action to file it.

The court ruled: "The motion for relief under CCP Section 473 is denied. The claimed mistake, inadvertence, surprise or excusable neglect did not cause the entry of the order. What caused it was the failure to have, despite repeated attempts to do so, and my repeated willingness to give you an opportunity to provide a viable mechanism [for going] forward. That would be a Sixth Amended Complaint. [¶] In addition, the attachment of what I had previously stated was not sufficient to your declaration filed in connection with this motion, filed on May 23rd, 2012. That is your present declaration attaching your prior declaration, does not satisfy the requirements of CCP Section 473 to attach a copy of what it is you want to have filed."

### b. No Error in Denying Discretionary Relief

The discretionary portion of section 473 reads: "The court *may*, upon any terms as may be just, relieve a party or his or her legal representative from a judgment, dismissal, order, or other proceeding taken against him or her through his or her mistake, inadvertence, surprise, or excusable neglect. Application for this relief shall be accompanied by a copy of the answer or other pleading proposed to be filed therein . . . ." (§ 473, subd. (b), italics added.) "Excusable neglect" arises if " 'a reasonably prudent person under the same or similar circumstances' might have made the same error." (*Solv-All v. Superior Court* (2005) 131 Cal.App.4th 1003, 1007 (*Solv-All*).)

The court acted within its broad discretion in declining relief based on the purported mistake or excusable neglect of Cal-Murphy's attorney. Cal-Murphy's argument, essentially, was that the demurrer was sustained without leave to amend due to Yanowitz's failure to file an opposition, and the opposition was not filed because Yanowitz thought an amended complaint as to MGR could be filed as of right pursuant to Code of Civil Procedure section 472 (section 472). For several reasons, this argument was meritless.

First, Yanowitz's reliance on section 472 did not constitute excusable neglect or mistake. Section 472 provides: "Any pleading may be amended once by the party of course, and without costs, at any time before the answer or demurrer is filed, or after demurrer and before the trial of the issue of law thereon, by filing the same as amended

43

and serving a copy on the adverse party." But Cal-Murphy did not *file* any amendment by the time of the hearing on MGR's demurrer—and, as Yanowitz knew, he could not have filed (and did not file) the proposed sixth amended complaint because he needed leave of court. Section 472, therefore, had no possible application. Furthermore, nothing in section 472 or the Rutter Group text Yanowitz purportedly reviewed indicates that a sixth amended complaint can be filed without leave of court after the hearing on a demurrer, and no reasonable attorney would reach that conclusion.[17]

Second, Yanowitz's view of section 472 did not *cause* Cal-Murphy's failure to file an opposition to the demurrer. To the contrary, Yanowitz averred in his declaration that he opted not to file an opposition based on his *concerns of efficiency*: "In view of the absence of charging allegations in the Fifth Amended Complaint, I believed that there was no legitimate basis for the Plaintiff to oppose MGR's demurrer. I believed that it would be more efficient merely to file the [Proposed] Sixth Amended Complaint against MGR, NOP/Hines, and Mixt Greens, rather than to file one pleading entitled 'Opposition to Demurrer,' to which I would file a separate proposed further amended complaint that applied to MGR only, and a separate pleading with the proposed amendments vis-à-vis NOP/Hines and Mixt Greens. [¶] *Accordingly*, I did not file any opposition to the demurrer." (Italics added; paragraph numbers omitted.)

Third, Yanowitz's view of section 472 did not *justify* failing to file an opposition to the demurrer—or at least some written request for leave to amend and explanation of the propriety of the amendment—in the specific context of the demurrer hearing.

---

[17] The Rutter Group passage notes: "[I]t has been *argued* that, where a demurrer has been sustained with leave to amend and plaintiff files an amended complaint, the amended complaint may also be amended once without leave of court before defendant answers or demurs. [¶] However, there is no known case permitting this. In addition, the statutory wording—'Any pleading may be amended *once*'—may be interpreted to preclude an amendment to an amended pleading." (Weil & Brown, Cal. Practice Guide: Civil Procedure Before Trial (The Rutter Group 2013), § 6.610.5, p. 6-156, italics in original.) Besides the obvious cautionary language in this passage, a competent reading discloses that even this broad interpretation of section 472 had absolutely nothing to do with the situation confronting Yanowitz, since it discusses amending the pleading "*before* defendant answers or demurs." (Italics added.) MGR had already filed its demurrer.

Regardless of his take on section 472, there was no reason not to file a specific document with a title that would lead the court to consider it along with the demurrer.

Finally, as discussed *ante*, it was ultimately not Cal-Murphy's failure to file an opposition, but the broader failure to establish any right or good cause to amend, that resulted in the demurrer being sustained without leave to amend. The court was well within its discretion to deny relief under section 473.

### c. No Error in Denying Relief Under Mandatory Provisions

The mandatory relief provision in section 473 reads as follows: "Notwithstanding any other requirements of this section, the court shall, whenever an application for relief is made no more than six months after entry of judgment, is in proper form, and is accompanied by an attorney's sworn affidavit attesting to his or her mistake, inadvertence, surprise, or neglect, vacate any (1) resulting default entered by the clerk against his or her client, and which will result in entry of a default judgment, or (2) resulting default judgment or dismissal entered against his or her client, *unless the court finds that the default or dismissal was not in fact caused by the attorney's mistake, inadvertence, surprise, or neglect.*" (Italics added.) Unlike the discretionary provision in the statute, the neglect referred to in this mandatory provision need not be excusable. (§ 473, subd. (b).)

Cal-Murphy argues it was entitled to relief because its attorney declared that the failure to file an opposition to the demurrer occurred as a result of his neglect, without Cal-Murphy's knowing participation, and the demurrer was sustained without leave to amend as a result.

Assuming, without deciding, that the mandatory provisions of section 473 might theoretically afford relief from a dismissal obtained after a demurrer is sustained without

leave to amend,[18] we agree with the trial court that the dismissal entered against Cal-Murphy "was not in fact caused by [its] attorney's mistake, inadvertence, surprise, or neglect." (§ 473, subd. (b).) As mentioned *ante*, the dismissal was not due to counsel's erroneous view of section 472, but due to the failure to show by written opposition any viable basis for amendment; and the failure to file a written opposition reflected a tactical decision.[19] (See *Jerry's Shell, supra*, 134 Cal.App.4th at pp. 1069-1074; *Pagarigan v. Aetna U.S. Healthcare of California, Inc*. (2007) 158 Cal.App.4th 38, 46.)

In any event, Cal-Murphy confirmed at the section 473 hearing that its proposed amendment to the fifth amended complaint as to MGR was its revised proposed sixth amended complaint—which the court had already ruled to be inappropriate—thus making it patently clear that granting relief under section 473 would lead only to the futility of a sixth amended complaint the court had already rejected. Accordingly, there was no basis for granting relief. (See *Page v. Insurance Co. of North America* (1969) 3 Cal.App.3d 121, 130; *Bethlahmy v. Customcraft Industries, Inc*. (1961) 192 Cal.App.2d 308, 310.)

---

[18]    The parties dispute this point, citing cases they contend lead to contrary conclusions. (E.g., *Jerry's Shell v. Equilon Enterprises, LLC* (2005) 134 Cal.App.4th 1058, 1069-1074 (*Jerry's Shell*); *English v. IKON Business Solutions, Inc*. (2001) 94 Cal.App.4th 130, 148; *Avila v. Chua* (1997) 57 Cal.App.4th 860, 868.) But it cannot be said that the order sustaining the demurrer without leave to amend in this case was tantamount to a default: Cal-Murphy's counsel appeared at the demurrer hearing and had the opportunity to argue the merits of whether leave to amend should be granted.

[19]    The cases on which Cal-Murphy relies are distinguishable in this regard. (*SJP Limited Partnership v. City of Los Angeles* (2006) 136 Cal.App.4th 511, 516-517 [reversing dismissal after party failed to appear because its attorney had advised that no appearance was necessary and a dismissal could not be entered]; *Solv-All, supra,* 131 Cal.App.4th 1003, 1009 [reversing entry of default against a defendant due to the attorney's mistaken belief that the parties were on the verge of a settlement and the plaintiff did not expect a response].)

Cal-Murphy fails to establish a prejudicial abuse of discretion.[20]

G. Demurrer and Dismissal as to Individual Plaintiffs

The trial court sustained NOP/Hines's demurrer as to the Individual Plaintiffs on the ground they were not real parties in interest. Appellants contend this was error.

"Every action must be prosecuted in the name of the real party in interest, except as otherwise provided by statute." (Code Civ. Proc., § 367.) A real party in interest is one who possesses the right sued upon. (*Buckland v. Threshold Enterprises, Ltd.* (2007) 155 Cal.App.4th 798, 813, disapproved on another ground in *Kwikset Corp. v. Superior Court* (2011) 51 Cal.4th 310, 337; see *Chao Fu, Inc. v. Chen* (2012) 206 Cal.App.4th 48, 57 [" 'real party in interest is one who has "an actual and substantial interest in the subject matter of the action and who would be benefited or injured by the judgment in the action" ' "].) "Where the complaint shows the plaintiff does not possess the substantive right or standing to prosecute the action, 'it is vulnerable to a general demurrer on the ground that it fails to state a cause of action.' " (*Schauer v. Mandarin Gems of Cal., Inc.* (2005) 125 Cal.App.4th 949, 955.)

The pleadings established that the Individual Plaintiffs were not the real parties in interest. The fifth amended complaint alleged that they subleased the premises from MDF in March 2004, helped to form Cal-Murphy in October 2004, and then "transferred and assigned the Sublease to [ ] Cal-Murphy," such that they no longer had any rights to

---

[20] In explaining its ruling at the section 473 hearing, the court also stated that Cal-Murphy had not satisfied the statutory requirement of attaching a copy of what Cal-Murphy "wanted to have filed." Cal-Murphy protests that Yanowitz filed a declaration in support of the section 473 motion, that this declaration attached his prior declarations, and that these prior declarations in turn attached Cal-Murphy's two proposed sixth amended complaints. However, in light of the entirety of the court's remarks at the hearing, the point was that Cal-Murphy had not attached a *viable* pleading as the amendment it wanted to have filed, particularly since earlier in the hearing the court had asked counsel to confirm that Cal-Murphy was relying on the proposed sixth amended complaint that the court had already rejected. At any rate, whether or not the court was correct about Cal-Murphy's failure to comply with the statutory requisite of filing a proposed pleading, the court did not abuse its discretion in denying the section 473 motion for the reasons stated in the text.

47

enforce the Lease. Moreover, the Individual Plaintiffs' attorney, in a declaration accompanying the opposition to the demurrer, admitted they "are not seeking any relief in this case" and "have not contended that they have an interest in any relief sought," but were named in the lawsuit because they were in the chain of title and "may become parties." They further admit in their appellate briefing that they would benefit only "indirectly from any recovery of monetary damages by Cal-Murphy or the abatement of the nuisances and trespass to the extent that Cal-Murphy's property rights or its profitability would be enhanced."

Individuals who claim an indirect benefit as members of a limited liability corporation do not have standing as real parties in interest. (*PacLink Communications Internat., Inc. v. Superior Court* (2001) 90 Cal.App.4th 958, 964-966 [member of LLC lacks standing where "injury was essentially a diminution in the value of [plaintiffs'] membership interest in the LLC occasioned by the loss of the company's assets"].)

Appellants argue that it makes no difference whether the Individual Plaintiffs are real parties in interest, because California has a broad permissive joinder statute which, they urge, does not require all plaintiffs to have a claim or right to relief against a defendant. (Code Civ. Proc., § 378, subd. (a).) That statute provides that "[a]ll persons may join in one action as plaintiffs if . . . [¶] . . . [t]hey have a[n] . . . interest adverse to the defendant in the . . . controversy which is the subject of the action."

However, Code of Civil Procedure section 378 is a *joinder* statute, which presupposes that the individuals have standing as real parties in interest. It does not permit joinder of a party who has no legal or property interest. (*Gartler v. First Nat. Bk. of San Pedro* (1928) 88 Cal.App. 411, 413 (*Gartler*).)

Appellants argue that *Gartler* is distinguishable because it involved an earlier version of the statute, which permitted joinder by persons having "an interest in the subject of the action, and in obtaining the relief demanded," as compared to the present statute that permits joinder by persons having an "interest adverse to the defendant in the . . . controversy which is the subject of the action." (*Gartler, supra*, at p. 413; Code Civ. Proc., § 378.) But this distinction makes no difference in this case, since the

Individual Plaintiffs do not have a legal interest in the subject of the action, in obtaining the relief demanded, *or* in the controversy.

Appellants present no legal authority for their argument that Code of Civil Procedure section 378 permits a court to dispense with basic standing requirements. They fail to establish error.[21]

### III.  DISPOSITION

The judgment is affirmed.

NEEDHAM, J.

We concur.

SIMONS, Acting P.J.

BRUINIERS, J.

---

[21]     In addition, Cal-Murphy's requests for judicial notice, filed on October 31, 2013, and April 1, 2014, are denied.